IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07–cv–01545–CMA–KMT

ROCKY YORK,

      Petitioner,

v.

LOUIS ARCHULETA, and
JOHN SUTHERS, The Attorney General of the State of Colorado,

      Respondents.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**Kathleen M. Tafoya**
**United States Magistrate Judge**

      This case comes before the court on Petitioner's Application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Application") (Doc. No. 2, filed July 23, 2007).  Pursuant to the Order of Reference dated October 18, 2007 (Doc. No. 10), this court has reviewed the Application, Respondents' Answer ("Answer") (Doc. No. 15, filed November 13, 2007), the pertinent parts of the state court record, the case file, and the applicable law, and is sufficiently advised to recommend that Petitioner's Application be DISMISSED WITH PREJUDICE.

## I.   BACKGROUND

Petitioner, Rocky York, was originally charged with manufacturing a schedule II controlled substance (methamphetamine); conspiracy to possess a schedule II controlled substance; contributing to the delinquency of a minor; use of a schedule II controlled substance; possession of drug paraphernalia; and three special offender counts: conspiracy, use of a weapon, and procuring a child agent.  (State Court Record, *People v. York*, 99CR446 [hereinafter "99CR446"], vol. I at 20–24.)  The information was later amended, adding the charges of reckless endangerment, possession with intent to distribute a schedule II controlled substance, and distribution of a schedule II controlled substance.  (*Id.* at 90–95.)

In September 1999, Petitioner entered a plea of guilty to one count of manufacturing a controlled substance.  (*Id.* at 36–39.)  However, prior to sentencing, Petitioner withdrew his guilty plea.  (*Id.* at 40, 58–60).  While awaiting trial, Petitioner's attorney filed a "Motion for Mental and/or Physical Evaluation of Defendant" raising concerns about his competency.  (*Id.* at 87–88.)  The trial court ordered a competency evaluation, and Petitioner was determined to be incompetent and was sent to the Colorado Mental Health Institute at Pueblo for treatment.  (*Id.* at 96–97, 115.)  After approximately two months of treatment, he was restored to competency.  (*Id.* at 116, 118.)

Petitioner's defense attorney then filed pre-trial suppression motions, including a "Motion to Suppress Evidence for Lack of Valid Warrant" and a "Verified Motion to Suppress All Evidence Obtained through Search Warrant which Lacked Probable Cause."  (*Id.* at 120–37.)

The trial court held a hearing on those motions October 19, 2000, and denied them both.  (*Id.* at 120, 127.)

The case proceeded to trial, and the jury ultimately convicted Petitioner of possession with intent to distribute a schedule II controlled substance, reckless endangerment, possession of drug paraphernalia, use of a schedule II controlled substance, and conspiracy to manufacture a schedule II controlled substance.  (Id., vol. II at 221–30.)  The jury also convicted Petitioner of possession of a schedule II controlled substance, and found that he possessed or had available for use a deadly weapon during the commission of that crime; manufacture of a schedule II controlled substance, with a finding that he conspired with one or more persons to engage in a pattern of manufacture; and distribution of a schedule II controlled substance, with a finding that he conspired with others to engage in a pattern of dispensing of a controlled substance.  (*Id.*)

On January 19, 2001, Petitioner was sentenced to the department of corrections for eighteen years for the manufacturing count; twelve years for conspiracy to manufacture; eight years for possession; two years for unlawful use; twelve years for possession with intent to distribute; sixteen years for distribution; six months in the county jail for reckless endangerment; and a $50 fine for possession of drug paraphernalia; with all sentences to run concurrently.  (*Id.*, v. XIV at 162-63; v. II at 247-48.)

Petitioner appealed his convictions, arguing that his Fourth Amendment right to be free from unreasonable searches and seizures was violated by the trial court's failure to suppress all evidence obtained in the search of his home, alleging that the search warrant affidavit failed to set forth facts establishing probable cause, that the search warrant was invalid and did not

3

specify the location to be searched, and that the good faith exception to the exclusionary rule did

not apply.  (Answer, Ex. A.)  The Colorado Court of Appeals ("CCA") rejected his arguments,

affirming his convictions, in *People v. York*, No. 01CA0390 (Colo. App. November 29,

2002)(not published).  (*Id.*, Ex. D.)

Petitioner filed a Petition for Writ of Certiorari raising the same claims he presented in

the Colorado Court of Appeals.  (*Id.*, Ex. E.)  The Colorado Supreme Court denied Petitioner's

petition on August 4, 2003.  (*Id.*, Ex. F.)  The mandate issued on August 7, 2003.  (*Id.*, Ex. G.)

On October 22, 2003, Petitioner filed a "Motion to Vacate Judgement and Sentence Pursuant to

Rule 35(c), Rules of Criminal Procedure of Colorado."  (99CR446, vol. III at 271–81.)

Petitioner alleged that trial counsel was ineffective, that the trial judge was biased against him,

and that he was entitled to a proportionality review of his sentence.  (*Id.*)  Petitioner requested

that an attorney be appointed, and that the trial court hold a hearing.  (*Id.*)  The prosecutor filed a

response to Petitioner's motion.  (*Id.* at 285–87.)  On November 25, 2003, the trial court denied

Petitioner's post-conviction motion, "for the reasons given by the People in their Response.

Moreover, the lawfulness of the search warrant was upheld on appeal.  His request for appointed

counsel is denied as the motion is without merit."  (*Id.* at 288.)

Petitioner appealed the state district court's ruling, alleging that his speedy trial rights

were violated; the district court judge erred in refusing to recuse himself from hearing the

post-conviction motion; the district court erred in refusing to allow the jury to be informed of his

diminished capacity and mental state; the district court erred in denying him a hearing on his

claims of ineffective assistance of counsel; the district court violated his constitutional rights by

4

not presenting the special offender counts to the jury for determination beyond a reasonable doubt; the court erred in failing to grant a proportionality review of his sentence; and the court erred in failing to make independent findings of fact and conclusions of law in denying his post-conviction motion.  (Answer, Ex. H.)

The CCA rejected Petitioner's contentions and affirmed the order of the state district court denying him relief in *People v. York*, No. 04CA0004 (Colo. App. October 6, 2005)(not published).  (*Id.*, Ex. K.)  Petitioner filed a Petition for Writ of Certiorari asserting the claims he had raised in the CCA, and the Colorado Supreme Court denied his petition on February 27, 2006.  (*Id.*, Exs. L, M.)  The mandate issued on March 2, 2006.  (*Id.*, Ex. N.)

At the time Petitioner filed his Application on July 23, 2007, he was incarcerated at the Fort Lyon Correctional Facility in Fort Lyon, Colorado.  (Application at 27.)  Petitioner asserts the following claims:  (1) his Fourth Amendment rights to be secure against unreasonable searches and seizures were violated; (2) his state and federal rights to a speedy trial were violated; (3) he was denied his right to trial before a fair, unbiased and impartial court; (4) he was denied his right to due process and a fair and impartial jury when the state district court refused to allow the jury to be informed of his diminished capacity and mental state due to his medical problems and constant intoxication; (5) he was denied his right to the effective assistance of counsel, and the state district court erred in denying him a hearing on his

post-conviction claims; and (6) his sentence constituted cruel and unusual punishment.[1]

(Application at 6–23.)

## II.    LEGAL STANDARDS

### A.    Pro Se *Petitioner*

Petitioner is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a Petitioner can prove facts that have not been alleged, or that a defendant has violated laws in ways that a Petitioner has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a Petitioner's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the Petitioner in the absence of any discussion of those issues").  The Petitioner's

---

[1]Petitioner also asserted a seventh claim for relief that was dismissed by Senior Judge Zita L. Weinshienk on October 11, 2007.  (*See* Doc. No. 8 at 2.)

*pro se* status does not entitle him to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### B.   Title 28 U.S.C. § 2254

Pursuant to 28 U.S.C. § 2254(d), an application for writ of habeas corpus may be granted only if it is based on an underlying state court decision that (1) is "contrary to . . . clearly established Federal law, as determined by the Supreme Court, or (2) involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court." *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); *see also Trice v. Ward*, 196 F.3d 1151, 1159 (10th Cir. 1999). A decision is contrary to Federal law when it contradicts prior Supreme Court precedent and arrives at a conclusion that is "diametrically different" from that precedent. *Williams*, 529 U.S. at 406. A decision involves an unreasonable application of Federal law when it utilizes the correct legal principle but reaches an "objectively unreasonable" outcome based on the facts at issue. *Id.* at 409. However, the Court "may not issue the writ simply because [it concludes] in [its] independent judgment that the state court applied the law erroneously or incorrectly. Rather, [the Court] must be convinced that the application was also 'objectively unreasonable.'" *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 566 n.4 (10th Cir. 2000), *overruled on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001).

In addition, a presumption of correctness exists regarding trial and appellate court findings of fact pursuant to this Court's habeas review. *Sumner v. Mata*, 455 U.S. 591, 592–93 (1982). As such, Petitioner bears the burden of rebutting this presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Houchin v. Zavaras*, 107 F.3d 1465, 1470

7

(10th Cir. 1997).  Federal courts must "face up to any disagreement as to the facts and to defer to the state court . . . ."  *Sumner*, 455 U.S. at 597–98.

## IV.    ONE-YEAR LIMITATION PERIOD FOR FILING APPLICATION FOR FEDERAL HABEAS RELIEF

Respondents do not challenge the timeliness of the Application under the one-year limitation period set forth in 28 U.S.C. §2244(d)(1).

## V.    EXHAUSTION OF CLAIMS IN STATE COURT AND PROCEDURAL DEFAULT

Respondents maintain that this court should dismiss Petitioner's Claims 2, 3, and 4. as they have been procedurally defaulted.  (Answer at 10–13.)  More specifically, Respondents argue that because Petitioner's Claims 2, 3, and 4 were not raised as an issue of federal law in state court Petitioner failed to exhaust these claims pursuant to 28 U.S.C. § 2254(b).  (*Id.*)  Respondents then argue that because state procedural rules would now bar Petitioner from seeking further relief in state court, these claims have been procedurally defaulted before this court and, therefore, should be dismissed.  (*Id.*)

A writ of habeas corpus may not be granted unless the applicant has exhausted his available state court remedies, with an exception for circumstances in which the existing remedies are not sufficient to protect the applicant's rights.  28 U.S.C. § 2254(b)(1).  Exhaustion requires that "the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack."  *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).

As to Petitioner's second claim, Respondents argue that although Petitioner argued in his state court appeal that the violation of his speedy trial rights "occasioned a state and federal constitutional violation," Petitioner's argument was based on violations of state speedy trial statutes, and this claim was therefore not properly presented to the state courts as a federal claim. (Answer at 10.)  Respondents also argue that Petitioner's third and fourth claims, that the trial judge was biased and that the court improperly refused to allow the jury to be informed of his diminished capacity and mental state, also were not presented to the state courts as federal claims and that Petitioner failed to cite to the United States Constitution or federal case law.  (Answer at 10–11.)  Upon review of Petitioner's post-conviction appeal, this court agrees.  Petitioner's Claims 2, 3, and 4 were not presented to the state courts as federal constitutional claims, and Plaintiff only asserted violations of Colorado law.  (Answer, Ex. H at 14–18.)  Moreover, although in Claim 2 Petitioner states in a conclusory fashion that the alleged error violated his federal constitutional rights, he cites no federal case law to support that claim and does nothing to connect the claim with the rights he alleges were violated.  "[I]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court."  *Gray v. Netherland*, 518 U.S. 152, 163 (1996).  Accordingly, Plaintiff has failed properly to exhaust Claims 2, 3, and 4.

"Generally, when a habeas petitioner has failed to exhaust his state court remedies, a federal court should dismiss the petition without prejudice so that those remedies may be pursued."  *Demarest v. Price*, 130 F.3d 922, 939 (10th Cir. 1997).  However, "if the court to which Petitioner must present his claims in order to meet the exhaustion requirement would now

find those claims procedurally barred, there is a procedural default for the purposes of federal habeas review." *Dulin v. Cook*, 957 F.2d 758, 759 (10th Cir. 1992) (citation omitted); *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

"Subject to enumerated exceptions, claims that could have previously been brought on direct appeal or in postconviction proceedings must be denied." *People v. Valdez*, 178 P.3d 1269, 1275 (Colo. App. 2007) (citing Colo. R. Crim. P. 35(c)(3)(VII)).  Petitioner's second, third, and fourth claims could have been raised on his direct appeal to the Colorado Court of Appeals.  Thus, none of the specifically enumerated exceptions to Colorado's successive post-conviction motions rule apply to Petitioner's second, third, and fourth claims.  Accordingly, pursuant to Colo. R. Crim. P. 35(c)(3)(VII), because Petitioner could have brought these claims on direct appeal, but failed to do so, any future assertion of these claims in a post-conviction motion would be denied as successive in state court.  Therefore, because no further state court remedy exists, Petitioner's unexhausted second, third, and fourth claims are procedurally defaulted in this court.

The court must next determine whether an exception to the procedural default rule applies that would allow Petitioner's Claims 2, 3, and 4 to be heard here.  Claims which have been procedurally defaulted must be dismissed with prejudice unless the prisoner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. 722, 749–50; *see also Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998).  Petitioner's *pro se* status does not exempt him from the

requirement of showing either cause and prejudice or a fundamental miscarriage of justice.
*Lepiscopo v. Tansy*, 38 F.3d 1128, 1130 (10th Cir. 1994).

In order to meet the "cause" element of the cause and prejudice standard, a Petitioner
must show that "some objective factor external to the defense" caused his failure to properly
raise his federal constitutional claims in state court.  *Murray v. Carrier,* 477 U.S. 478, 488
(1986); *Lepiscopo*, 38 F.3d at 1130.  The far more stringent test to excuse procedural default, the
fundamental miscarriage of justice exception, is an "extremely narrow exception, implicated
only in an extraordinary case, 'where a constitutional violation has probably resulted in the
conviction of one who is actually innocent.'"  *Phillips v. Ferguson*, 182 F.3d 769, 774 (10th
Cir.1999) (quoting *Ballinger v. Kerby*, 3 F.3d 1371, 1375 (10th Cir. 1993) (quoting *Murray*, 477
U.S. at 496)).  To invoke the fundamental miscarriage of justice exception, a petitioner must
"provide[] the court with a colorable showing of factual innocence."  *Beavers v. Saffle*, 216 F.3d
918, 928  n.3 (10th Cir. 2000) (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

Petitioner fails to provide any basis for a finding of cause and prejudice or a fundamental
miscarriage of justice in this action.  Therefore, this court finds that Claims 2, 3, and 4, which
Petitioner failed to exhaust, are procedurally barred.`

## VI.    *ANALYSIS ON THE MERITS*

### A.    *Claim One*

Petitioner claims his Fourth Amendment rights to be secure against unreasonable
searches and seizures were violated in the state court proceedings.  (Application at 6–10.)
Petitioner argues that the allegedly unconstitutional search allowed "the harvest of forbidden

11

fruit" and requests that the court "vacate and reverse the judgment, conviction and sentences and remand the matter to the district court for suppression of all evidence obtained through execution of the search warrant." (*Id.* at 9–10.)  "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Stone v. Powell*, 428 U.S. 465, 494 (1976); *see also Smallwood v. Gibson*, 191 F.3d 1257, 1265 (10th Cir. 1999).

The record in this case reflects that, prior to trial, defense counsel filed a motion to suppress evidence for lack of a valid warrant, asserting that the existence of three different versions of the search warrant for his home suggested some impropriety.   (99CR446, vol. I at 124-26.)  The state district court held a hearing on the issues presented and reviewed the search warrant documents, the prosecutor's offer of the proof, and Petitioner's own testimony.  The trial court denied Petitioner's suppression motion, finding that the affidavit "states probable cause to cause the judges, Judge Smith and Deister, to issue the search warrant."  (*Id.*, vol. XVII at 12.) The trial court also reviewed the original search warrant documents (*id.* at 32–33), made findings regarding the existence of more than one version of the warrant, found that the warrant was valid, and denied Petitioner's motion (*id.* at 38-40).

Following his conviction, Petitioner appealed the state district court's suppression rulings.  The CCA reviewed the search warrants and affidavits, as well as the record of the suppression hearing, set forth the proper constitutional standards for addressing Petitioner's Fourth Amendment claims, and rejected Petitioner's claims.  (Answer, Ex. D at 3–8.)  The

12

Colorado Court of Appeals determined that the search warrant affidavit contained allegations sufficient to establish probable cause and justify the issuance of the warrant to search Petitioner's home, and that any lack of particularity in the search warrant as to the location to be searched was cured because the affidavit specifically described the premises to be searched. (*Id.*)

As Petitioner was provided an opportunity for full and fair litigation of his Fourth Amendment claim in the state proceedings, this court is barred from granting habeas corpus relief. *Stone,* 428 U.S. at 494.

### B.      Claim Five

Petitioner alleges he was denied effective assistance of trial counsel. To prevail on an ineffective assistance of counsel claim, a petitioner must show that counsel's performance was deficient and that the petitioner was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In addition, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Id.* It is Petitioner's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances. *See id.* Under the prejudice prong, Petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If Petitioner fails to satisfy his burden with regard to either prong of the *Strickland* test, his ineffective assistance of counsel claim must be dismissed. *See id.* at 697. The CCA

identified and relied on *Strickland*.  (App. K. at 8–10.)  As such, Petitioner can prevail only if the CCA unreasonably applied *Strickland* to Petitioner's claims.

Petitioner asserts that his counsel failed to consult with Petitioner regarding the scheduling of a trial outside of the speedy trial parameters mandated by Colo. Rev. Stat. § 16-4-103(2), and that his counsel failed to object to scheduling a trial date outside of the speedy trial parameters.  Petitioner argued in his state appeal that when the state district court ordered that he be held in jail without bond pending a determination of his competency, the court in effect raised his bond.  Petitioner claimed that pursuant to Colo. Rev. Stat. § 16-4-103(2)(1999), he was entitled to trial within ninety days after his bail bond was increased. However, the CCA resolved this issue on state law grounds, finding that Petitioner's bond was not revoked pursuant to § 16-4-103, which applied to defendants whose bonds were revoked following a specific finding that they committed a class 1, 2, 3, or 4 felony while free on bond. (Answer, Ex. K at 4–6.)  The CCA found that Petitioner's bond was revoked pending a determination of his competency, and, therefore, he was not entitled to be tried within ninety days of the date of his bond revocation.  (*Id.* at 6.)  A federal habeas court has no authority to review a state court's interpretation or application of its own state laws.  *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).  Instead, when conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Id.* Accordingly, as Petitioner's claim in this regard relates to a challenge to the state court's interpretation of its own laws, the claim is not cognizable in this habeas corpus proceeding, and Petitioner is unable to show that his counsel's performance was deficient.

14

Petitioner alleges that trial counsel's ineffectiveness also is demonstrated by his lack of preparation for the preliminary hearing in this case.  On the date the preliminary hearing was scheduled, defense counsel explained that he had not been able to effectively communicate with Petitioner in preparation for the hearing, since Petitioner had been looking for another attorney.  (99CR446, vol. XVII at 3–5.)  Defense counsel, by motion and orally, requested a continuance, but the trial court denied the request, finding that defense counsel had over seven months (from March 3, 2000, when the charges were filed, until November 11, 2000, the date of the preliminary hearing) to prepare for the preliminary hearing, and that there was no good cause shown to justify a continuance.  (*Id.* at 3–7; vol. II at 150-51.)  A preliminary hearing serves the limited purpose of determining whether there is probable cause to believe that an offense has been committed and that the person charged committed it.  *See People v. Villapando*, 984 P.2d 51, 55 (Colo. 1999).

The CCA found:

> Here, our review of the record reveals that the prosecution presented overwhelming evidence in support of the charges against York, including testimony of York's presence at the crime scene at the time of the raid, numerous crime scene photographs and exhibits, and York's admission of guilt to four of the counts against him.  The record also shows that defense counsel thoroughly crossexamined the prosecution's witnesses.
>
> Accordingly, we conclude that there is no reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.  Therefore, we need not address whether his performance was deficient, and we conclude that York was not denied ineffective [sic] assistance of counsel.

(Answer, Ex. K at 9.)

A review of the preliminary hearing transcript shows that, indeed, the prosecution presented evidence sufficient for the court to determine there was probable cause. (*See* 99CR446, vol. XVII.)  In addition, defense counsel cross-examined both witnesses produced by the prosecution. (*Id.*)  Petitioner contends that trial counsel failed to adequately question Witness Sal Dimercurio at the preliminary hearing.  The CCA found that Petitioner had not established the prejudice prong of *Strickland*. (Answer, Ex. K at 9.)  In this proceeding, Petitioner has failed to show that, in light of all of the evidence and testimony at the preliminary hearing, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  As such, this court cannot find the CCA unreasonably applied *Strickland* to Petitioner's claims.

Petitioner also contends that trial counsel failed to adequately question Dimercurio at trial.  However, the record shows that at trial defense counsel extensively cross-examined the witness about the jug containing methamphetamine found at Petitioner's home.  Dimercurio acknowledged that while he estimated the jug to be one-quarter full, he never weighed or determined the precise quantity of liquid in the jug, and indicated that a picture of the jug showed that it could have been a little less than a quarter full.  (99CR446, vol. XIII at 138–40.)  Defense counsel then questioned the witness about whether the methamphetamine in solution was actually usable.  (*Id.* 147–49, 163–65.)  During that cross-examination, defense counsel also introduced a copy of the laboratory report that Petitioner suggests he overlooked, and questioned Dimercurio about the DEA report estimating the manufacturing capacity of this clandestine laboratory to be 2.7 to 3.7 grams of methamphetamine.  (*Id.* at 159–62; vol. X.)  The record

reflects that trial counsel vigorously and effectively questioned Dimercurio about the liquid methamphetamine recovered from the defendant's home.

Petitioner further argues that counsel was ineffective in not obtaining an expert witness for the defense, and in not getting the substances taken from his home tested before trial. Defense counsel did express some confusion just before trial about which exhibits were available for testing (*id.*, vol. XI at 3–11); however, defense counsel had the available exhibit tested by Forensic Science Consultants (*id.*, vol. II at 184), and was able to cross-examine the prosecution witnesses about the other items found at the home, the manner in which they were sampled, and the fact that they were destroyed after samples were taken for testing in the DEA lab. (*Id.*, vol. XI 161–65; vol. XIII at 26–27, 139–40.)

Petitioner also asserts that trial counsel failed in challenging the legality of the search warrants issued in this case. However, defense counsel filed suppression motions alleging that the search warrants for his home were invalid, and argued those motions at a pre-trial hearing, but the trial court ultimately denied those motions. (*Id.*, vol. I at 120–37; vol. XVIII at –40). Petitioner challenged that ruling in his direct appeal, and the CCA upheld the trial court's determination. (Answer, Ex. D.)

This court finds Petitioner has failed to meet either the deficient performance or prejudice prongs set forth in *Strickland* or that the CCA unreasonably applied *Strickland* to Petitioner's claims. Accordingly, Petitioner's ineffective assistance of counsel claims must fail.

Petitioner also argues that his counsel was ineffective for allowing him to enter a guilty plea, for failing to request a competency evaluation more quickly, and for failing to request that

17

the court grant Petitioner bond while he was undergoing a competency evaluation.  (Application at 17, 18.)  While Petitioner did raise an ineffective assistance of counsel claim in his post-conviction appeal, the claim was raised only in the context of issues addressed above. (Answer, Ex. H at 19–29.)  The CCA, therefore, did not specifically address Petitioner's claims that counsel was ineffective for allowing him to enter a guilty plea, for failing to request a competency evaluation more quickly, and for failing to request that the court grant Petitioner bond while he was undergoing a competency evaluation.  (*Id.*, Ex. K at 8–10.)  Because Petitioner failed to pursue these claim on appeal, he must establish cause and prejudice for this court to review the claims.  *See Coleman*, 501 U.S. at 750.  Plaintiff has failed to show that "some objective factor external to the defense" caused his failure to properly raise his federal constitutional claims in state court, *Murray*, 477 U.S. at 488, and failed to "provide[] the court with a colorable showing of factual innocence," *Beavers*, 216 F.3d at 928 n.3.  Accordingly, Petitioner has failed to meet the standard required for this court to review these procedurally barred claims.

### C.      Claim Six

Petitioner claims that he was subjected to cruel and unusual punishment because his 18-year sentence was disproportionate to his offenses and because there was a disparity between his sentence and that of other drug offenders.  (Application at 22–23.)

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a narrow proportionality principle that applies to noncapital sentences." *Ewing v. California*, 538 U.S. 11, 20 (2003) (citation and internal quotations omitted).  The proportionality principle,

18

however, "reserves a constitutional violation for only the extraordinary case." *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003); *see also United States v. Gillespie*, 452 F.3d 1183, 1190–91 (10th Cir. 2006). As the Tenth Circuit has instructed, courts "are reluctant to interfere with the legislative determination of an appropriate sentence range." *Hawkins v. Hargett*, 200 F.3d 1279, 1285 (10th Cir. 1999). Application of the narrow proportionality principle has, therefore, been reserved to the truly extraordinary case involving a sentence grossly disproportionate to the crime of conviction. *Id.* at 1282.

In this case, Petitioner was convicted of a possession with intent to distribute a schedule II controlled substance, reckless endangerment, possession of drug paraphernalia, use of a schedule II controlled substance, and conspiracy to manufacture a schedule II controlled substance. (99CR446, vol. II at 221–30.) Additionally, the jury returned special offender verdicts, finding Petitioner possessed and had a deadly weapon available for use, and that he conspired with others to engage in a pattern of manufacturing and dispensing a controlled substance. (*Id.*)

Colorado's special offender statute requires that a defendant be sentenced to at least the minimum term of years within the presumptive range for a class 2 felony (8 years), but not more than twice the maximum term of years within the presumptive range for a class 2 felony (48 years). Colo. Rev. Stat. § 18-18-407; § 18-1.3-401(1)(a)(V)(A). The CCA noted that the trial court "carefully evaluated the harshness of York's sentence, stating that it could have sentenced York to as long as forty-eight years in prison, instead of the eighteen it imposed." The CCA characterized Petitioner's crimes as "per se grave or serious for the purposes of proportionality

review." (Answer, Ex. K at 11–12 (citing *Close v. People*, 48 P.3d 528 (Colo. 2002).)  As such, the CCA found that "the only necessary proportionality inquiry by the trial court during sentence was the harshness of the penalty." (*Id.*, Ex. K at 12.)  The CCA concluded that Petitioner's sentence was not grossly disproportionate to his crimes under the trial court's abbreviated proportionality review, and Petitioner was not entitled to an extended proportionality review. (*Id.* at 12–13.)

Accordingly, Petitioner's eighteen-year sentence is not so extreme or extraordinary as to violate the Eighth Amendment.  *Lockyer*, 538 U.S. at 77.  The CCA's determination was based on a reasonable application of the law and the facts, and its conclusion is entitled to deference from this court.

WHEREFORE, for the foregoing reasons, this court respectfully

**RECOMMENDS** that the habeas corpus application be DENIED and the action be DISMISSED WITH PREJUDICE.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, Petitioners waived their right to appeal the Magistrate Judge's ruling).

*But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does

not apply when the interests of justice require review).

Dated this 31st day of December, 2009.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge